1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

8

EASTERN DISTRICT OF CALIFORNIA

9

10

GERVARGEZ SARISHAMSHAJIAN,

11          Plaintiff,

12     v.

13 KILOLO KIJAKAZI,

14 Acting Commissioner of Social Security,

15

16 _____/

17

18

Case No. 1:22-cv-00499-SKO

ORDER ON PLAINTIFF'S SOCIAL
SECURITY COMPLAINT

(Doc. 1)

19                    **I.      INTRODUCTION**

20         Plaintiff Gervargez Sarishamshajian ("Plaintiff") seeks judicial review of a final decision

21 of the Commissioner of Social Security (the "Acting Commissioner" or "Defendant") denying

22 his application for Supplemental Security Income (SSI) under Title XVI of the Social Security

23 Act (the "Act"), 42 U.S.C. § 1383(c).  (Doc. 1.)  The matter is currently before the Court on the

24 parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto,

25 United States Magistrate Judge.[1]

26                    **II.     BACKGROUND**

27         Plaintiff protectively filed an application for SSI payments on November 27, 2019, alleging

28

---

[1] The parties have consented to the jurisdiction of the U.S. Magistrate Judge.  (*See* Doc. 9.)

1   disability beginning March 22, 2017, due to neck pain, lower back pain, hearing loss, knee pain,

2   anxiety, right hand nerve damage (unable to grasp), depression, sleep disorder, and acid reflux.

3   (Administrative Record ("AR") 15, 33, 51–52, 67–68, 72, 90–91, 165, 175.)  Plaintiff was born on

4   January 3, 1967, has at least a high school education, and has no past relevant work.  (AR 23, 51,

5   67, 79, 165, 175.)

6   **A.      Relevant Evidence of Record[2]**

7            **1.      Medical Evidence**

8            In September 2019, Plaintiff attended an office visit at Golden Valley Health Center to

9   establish care as a new patient.  (AR 307.)  He was seen by Family Nurse Practitioner Jennings Lee

10  ("FNP Lee"), and he reported a history of lower back pain and arthritis in the right elbow and

11  bilateral knee.  (AR 307.)  Plaintiff explained that his lower back pain was aggravated by bending,

12  flexion, standing, and twisting, he could not stand and sit for long hours, and he was unable to get

13  a job due to the pain.  (AR 307.)  A physical examination revealed that Plaintiff's left-hand strength

14  was at a four out of five, and tremors were present at the left upper and lower extremities.  (AR

15  310.)  FNP Lee ordered further diagnostic evaluations, including a MRI of the thoracic spine, the

16  lumbar spine, and cervical spine.  (AR 310–11.)  The treatment notes from the visit listed FNP Lee

17  as Plaintiff's primary care provider.  (*See* AR 312.)

18           The MRI of Plaintiff's cervical spine revealed severe central stenosis at C5-C6, and the

19  MRI of his lumbar spine indicated multiple degenerative disc disease.  (AR 302.)  At a follow up

20  visit, Plaintiff reported being unable to perform heavy lifting involving the lower back.  (AR 302.)

21  FNP Lee noted that Plaintiff likely had osteoarthritis and discussed treatment options with Plaintiff,

22  including chronic pain medication, physical therapy, and surgery if his condition worsened.  (AR

23  302, 304.)

24           Over the next few months, Plaintiff saw other providers at Golden Valley Health Center,

25  though his treatment notes still listed FNP Lee as his primary care provider.  (*See* AR 296–98, 300–

26  01.)  Plaintiff saw FNP Lee again in January 2020 and reported that his impairments affected his

27

28  _____
    [2] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the
    contested issues.

1  daily activities and he was still unable to work.  (AR 383.)  Plaintiff also indicated that he was

2  denied physical therapy due to lack of improvement for previous sessions, and his pain was at an

3  eight out of ten.  (AR 383.)  FNP Lee reviewed side effects of his medication regimen to treat pain

4  related to cervical stenosis of the spinal canal.  (AR 386.)  Plaintiff was also screened for depression

5  and anxiety.  (AR 383.)  Based on the screenings, FNP Lee listed Plaintiff's depression and anxiety

6  as severe.  (AR 383.)  FNP Lee referred Plaintiff to behavioral health services for further evaluation

7  as soon as possible.  (AR 386.)

8        In February 2020, Plaintiff continued to report a pain of eight out of ten.  (AR 377.)  He

9  also described feeling depressed because he was unable to work due to his chronic pain, and he

10  requested medication to help control his depression.  (AR 377.)  FNP Lee conducted a physical

11  examination, which revealed limited range of motion as to Plaintiff's cervical spine due to pain.

12  (AR 379.)  FNP Lee advised Plaintiff to perform range of motion exercises and stretch to help

13  support the affected area, and the provider refilled his pain medication.  (AR 379–80.)  FNP Lee

14  also provided Plaintiff with guidance and medication to treat his depression.  (AR 380.)  Over the

15  following few months, Plaintiff continued reporting chronic pain and he requested refills of his

16  pain medication.  (AR 363, 365, 373.)

17        **2.**     **Opinion Evidence**

18        On January 23, 2020, FNP Lee completed a questionnaire regarding Plaintiff's diagnoses

19  of cervical stenosis and degenerative disc disease of the lumbar spine.  (AR 345.)  Although FNP

20  Lee deemed Plaintiff's prognosis as stable, the provider also listed the expected duration of the

21  conditions as permanent.  (AR 345.)  FNP Lee opined that Plaintiff was unable to work full-time

22  or part-time, and he could not participate in agricultural work.  (AR 345.)  FNP Lee checked "Yes"

23  in the box asking whether Plaintiff had a disability that would restrict his ability to perform certain

24  tasks.  (AR 345.)  FNP Lee noted that Plaintiff's limitations were his inability to lift and his right-

25  hand weakness, and opined that the types of tasks Plaintiff could not perform were lifting, sitting,

26  or standing for prolonged hours.  (AR 345.)

27  **B.**    **Administrative Proceedings**

28        The Commissioner denied Plaintiff's application for benefits initially on April 7, 2020,

1   and again on reconsideration on May 8, 2020.  (AR 65–66, 79–81, 90–91, 99–100.)  Plaintiff

2   requested a hearing before an Administrative Law Judge ("ALJ").  (AR 105.)  The ALJ conducted

3   a hearing on March 1, 2021.  (AR 30–50.)  Plaintiff appeared at the hearing with counsel and

4   testified.  (AR 34–46.)  A vocational expert  ("VE") also testified.  (AR 46–48.)

5   **C.      The ALJ's Decision**

6          In a decision dated April 12, 2021, the ALJ found that Plaintiff was not disabled, as defined

7   by the Act.  (AR 15–25.)  The ALJ conducted the five-step disability analysis set forth in 20 C.F.R.

8   § 416.920.  (AR 17–25.)  The ALJ determined that Plaintiff had not engaged in substantial gainful

9   activity since November 27, 2019, the application date (step one).  (AR 17.)  At step two, the ALJ

10  found the impairment of degenerative disc disease to be severe.  (AR 17.)  Plaintiff did not have an

11  impairment or combination of impairments that met or medically equaled one of the listed

12  impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three).  (AR 20.)

13         The ALJ then assessed Plaintiff's residual functional capacity ("RFC") and applied the RFC

14  assessment at steps four and five.  *See* 20 C.F.R. § 416.920(a)(4) ("Before we go from step three

15  to step four, we assess your residual functional capacity . . . . We use this residual functional

16  capacity assessment at both step four and step five when we evaluate your claim at these steps.").

17  The ALJ determined that Plaintiff had the RFC:

18
        to perform light work as defined in 20 CFR [§] 416.967(b) except occasionally
        climb, balance, stoop, kneel, crouch, and crawl; and frequently bilaterally finger.
19

20  (AR 20.)  Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected

21  to cause the alleged symptoms[,]" the ALJ rejected Plaintiff's subjective testimony as "not entirely

22  consistent with the medical evidence and other evidence in the record . . . ."  (AR 21.)

23         The ALJ determined that Plaintiff had no past relevant work (step four) and that, given his

24  RFC, he could perform a significant number of jobs in the national economy, specifically cashier

25  and cleaner (step five).  (AR 23–24.)  The ALJ concluded that Plaintiff was not disabled since the

26  application date of November 27, 2019.  (AR 24–25.)

27         Plaintiff sought review of this decision before the Appeals Council, which denied review

28  on March 24, 2022.  (AR 1–6.)  Therefore, the ALJ's decision became the final decision of the

1    Commissioner.  20 C.F.R. § 416.1481.

2

3                        **III.        LEGAL STANDARD**

4    **A.      Applicable Law**

5         An individual is considered "disabled" for purposes of disability benefits if he or she is

6    unable "to engage in any substantial gainful activity by reason of any medically determinable

7    physical or mental impairment which can be expected to result in death or which has lasted or can

8    be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

9    However, "[a]n individual shall be determined to be under a disability only if [their] physical or

10   mental impairment or impairments are of such severity that [they are] not only unable to do [their]

11   previous work but cannot, considering [their] age, education, and work experience, engage in any

12   other kind of substantial gainful work which exists in the national economy."  *Id.* § 423(d)(2)(A).

13        "The Social Security Regulations set out a five-step sequential process for determining

14   whether a claimant is disabled within the meaning of the Social Security Act."  *Tackett v. Apfel*,

15   180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520).  The Ninth Circuit has provided

16   the following description of the sequential evaluation analysis:

17        In step one, the ALJ determines whether a claimant is currently engaged in
18        substantial gainful activity.  If so, the claimant is not disabled.  If not, the ALJ
          proceeds to step two and evaluates whether the claimant has a medically severe
19        impairment or combination of impairments.  If not, the claimant is not disabled.  If
          so, the ALJ proceeds to step three and considers whether the impairment or
20        combination of impairments meets or equals a listed impairment under 20 C.F.R. pt.
          404, subpt. P, [a]pp. 1.  If so, the claimant is automatically presumed disabled.  If
21        not, the ALJ proceeds to step four and assesses whether the claimant is capable of
          performing [their] past relevant work.  If so, the claimant is not disabled.  If not, the
22        ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to
23        perform any other substantial gainful activity in the national economy.  If so, the
          claimant is not disabled.  If not, the claimant is disabled.
24

25   *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see, e.g.*, 20 C.F.R. § 404.1520(a)(4)

26   (providing the "five-step sequential evaluation process" for SSI claimants).  "If a claimant is found

27   to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent

28   steps."  *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

                                              5

1    "The claimant carries the initial burden of proving a disability in steps one through four of

2    the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir.

3    1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden

4    shifts to the Commissioner in step five to show that the claimant can perform other substantial

5    gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

6    **B.    Scope of Review**

7    "This court may set aside the Commissioner's denial of [social security] benefits [only] when

8    the ALJ's findings are based on legal error or are not supported by substantial evidence in the record

9    as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence is defined as being

10   more than a mere scintilla, but less than a preponderance." *Edlund v. Massanari*, 253 F.3d 1152,

11   1156 (9th Cir. 2001) (citing *Tackett*, 180 F.3d at 1098). "Put another way, substantial evidence is

12   such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

13   (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

14   "This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec.*

15   *Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by

16   inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th

17   Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the

18   evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund*, 253 F.3d at

19   1156 ("If the evidence is susceptible to more than one rational interpretation, the court may not

20   substitute its judgment for that of the Commissioner." (citations omitted)).

21   Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a

22   specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*,

23   143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole,

24   weighing both evidence that supports and evidence that detracts from the [Commissioner's]

25   conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

26   Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless."

27   *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*,

28   454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record

1   that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'"

2   *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins*, 466 F.3d at 885).   "[T]he burden of showing that

3   an error is harmful normally falls upon the party attacking the agency's determination."   *Shinseki*

4   *v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

5                                    **IV.          DISCUSSION**

6          Plaintiff contends, *inter alia*, that the ALJ improperly evaluated the medical opinion

7   evidence, specifically that given by FNP Lee.   (Doc. 11 at 15–18.)   The Acting Commissioner

8   responds that the ALJ's treatment of the medical opinion evidence was correct.   (Doc. 14 at 14–18.)

9   As discussed below, the Court agrees with Plaintiff.

10  **A.      The ALJ Erred in their Evaluation of FNP Lee's Medical Opinion**

11          **1.          Legal Standard**

12          Plaintiff's claim for SSI is governed by the agency's "new" regulations concerning how

13  ALJs must evaluate medical opinions for claims filed on or after March 27, 2017.   20 C.F.R.

14  § 416.920c.   The regulations set "supportability" and "consistency" as "the most important factors"

15  when determining the opinions' persuasiveness.   20 C.F.R. § 416.920c(b)(2).   Although the

16  regulations eliminate the "physician hierarchy," deference to specific medical opinions, and

17  assigning "weight" to a medical opinion, ALJs must still "articulate how [they] considered the

18  medical opinions" and "how persuasive [they] find all of the medical opinions."   20 C.F.R.

19  § 416.920c(a)–(b).

20          Under the new regulations, "an ALJ's decision, including the decision to discredit any

21  medical opinion, must simply be supported by substantial evidence."   *Woods v. Kijakazi*, 32 F.4th

22  785, 787 (9th Cir. 2022).   In conjunction with this requirement, "[t]he agency must 'articulate . . .

23  how persuasive' it finds 'all of the medical opinions' from each doctor or other source, . . . and

24  'explain how [it] considered the supportability and consistency factors' in reaching these findings."

25  *Id*. at 792 (citing 20 C.F.R. § 404.1520c(b)); *see also id*. § 416.920c(b).

26          With these principles in mind, the Court reviews the weight given to FNP Lee's opinion.

27          **2.          Analysis**

28

1    Here, the record reflects that FNP Lee was Plaintiff's primary care provider beginning in

2  September 2019.  (AR 312.)  In January 2020, FNP Lee completed a questionnaire regarding

3  Plaintiff's diagnoses of cervical stenosis and degenerative disc disease of the lumbar spine.  (AR

4  345.)  FNP Lee deemed Plaintiff's prognosis as stable and permanent.  (AR 345.)  FNP Lee

5  opined that Plaintiff was unable to work full-time or part-time, and he had a disability that would

6  restrict his ability to perform certain tasks.  (AR 345.)  In particular, FNP Lee opined that

7  Plaintiff's limitations were his inability to lift and his right-hand weakness, and the types of tasks

8  Plaintiff could not perform were lifting, sitting, or standing for prolonged hours.  (AR 345.)

9    In weighing FNP Lee's opinion related to Plaintiff's functioning, the ALJ reasoned as

10  follows:

11    The undersigned finds the opinion of Dr. Lee dated January 23, 2020 to be
    unpersuasive (Ex. 7F).  Dr. Lee stated [Plaintiff] was unable to work.  The
12   undersigned finds this opinion inconsistent with and unsupported by the record, as
    detailed above, that showed normal strengthen and sensation, normal gait, and the
13   abilities to drive, handle his money, and go out alone.  Therefore, based on the
    claimant's record as a whole, the undersigned finds the range of light residual
14   functional capacity herein to properly account for [Plaintiff's] abilities and
    limitations.
15

16  (AR 23.)

17    The foregoing is the ALJ's entire discussion as to FNP Lee's medical opinion which is

18  insufficient.  Aside from noting that FNP Lee opined that Plaintiff was unable to work,[3] the ALJ

19  did not discuss or evaluate the functional limitations opined by the provider in any meaningful way.

20  "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing

21  more than ignoring it, asserting without explanation that another medical opinion is more

22  persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his

23  conclusion."  *Garrison v. Colvin*, 759 F.3d 995, 1012–13 (9th Cir. 2014) (citing *Nguyen v. Chater*,

24  100 F.3d 1462, 1464 (9th Cir. 1996)).  The ALJ was required to consider the functional limitations

25  identified by FNP Lee in the provider's medical opinion—specifically, Plaintiff's inability to lift,

26  sit, or stand for prolonged hours and right-hand weakness (AR 345)—and to explain, if any, weight

27

28  [3] The Court also finds that the ALJ erred by failing to discuss the supportability of FNP Lee's medical opinion. *See Woods*, 32 F.4th at 791–92 (quoting 20 C.F.R. § 404.1520c(c)(1)); *see also id*. § 416.920c(c)(1).

8

1  they assigned these limitations in determining Plaintiff's RFC along with reasons in support of that

2  conclusion.  *See Kenneth C. v. Saul*, No. 19-cv-06627-JST, 2021 WL 4927413, at *11 (N.D. Cal.

3  Mar. 15, 2021) (quoting *Means v. Colvin*, No. 2:15-cv-0327-KJM-CKD, 2016 WL 366358, at *2

4  (E.D. Cal. Jan. 29, 2016) (finding reversible error because the ALJ failed to address medical

5  opinion evidence)); *see also Kelly v. Astrue*, 471 F. App'x 674, 676 (9th Cir. 2012) (finding the

6  ALJ erred in silently disregarding the medical opinions of the treating psychiatrist).

7         FNP Lee's findings as to Plaintiff's physical impairments "are relevant to the ALJ's

8  assessment of [P]laintiff's ability to work and directly bear on the formulation of [his] RFC."

9  *Charmayne G. v. Comm'r of Soc. Sec. Admin.*, No. 3:21-cv-00294-JR, 2022 WL 6702621, at *5

10  (D. Or. Oct. 11, 2022).  For example, FNP Lee opined that Plaintiff had weakness in his right hand

11  (AR 345), while the ALJ's RFC provides that Plaintiff may frequently bilaterally finger (AR 20).

12  The ALJ's omission of a discussion of the functional limitations opined by FNP Lee, which

13  constituted probative evidence of Plaintiff's physical impairments, was error.  *See Vincent v.*

14  *Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (the ALJ "must explain why 'significant probative

15  evidence has been rejected.'"); *see, e.g.*, *Embrey v. Brown*, 849 F.2d 418, 422 (9th Cir. 1988)

16  (finding the ALJ erred where the ALJ did not give any reason for rejecting a doctor's assessment

17  of the plaintiff's capacity for standing, lifting, carrying, and sitting).

18         The Acting Commissioner contends that the ALJ relied on substantial evidence in

19  evaluating FNP Lee's medical opinion and finding it to be unpersuasive.  (Doc. 14 at 15–18.)  In

20  particular, the Acting Commissioner points to earlier portions of the ALJ's decision that cite to

21  FNP Lee's treatment notes and asserts that the ALJ properly evaluated the provider's medical

22  opinion in light of the findings contained in those treatment notes.  (*Id*.)  However, neither the

23  Court, nor the Acting Commissioner, may *post-hoc* "comb the administrative record" to find

24  support for the ALJ's finding as to the persuasiveness of FNP Lee's opinion.  *Burrell v. Colvin*,

25  775 F.3d 1133, 1138 (9th Cir. 2014); *see Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)

26  ("We are constrained to review the reasons the ALJ asserts.").  In the absence of any explanation

27  by the ALJ, the Court is unable to determine whether they properly considered all of the limitations

28  identified by FNP Lee in rejecting the provider's opinion.  *See Garrison*, 759 F.3d at 1012–13.

1    The Acting Commissioner also contends that the ALJ was justified in rejecting FNP Lee's

2 opinion because the functional limitations opined by the provider were "extreme" and "[i]n sharp

3 contrast with the findings of every other doctor in the record." (Doc. 14 at 16.)  The Court rejects

4 this argument, primarily because the ALJ did not actually invoke such rationale in discounting FNP

5 Lee's medical opinion. While the ALJ briefly discussed finding the medical opinions of a

6 consultive examiner and state agency medical consultants to be persuasive, the ALJ did not invoke

7 the persuasiveness of these opinions as reasons to discount FNP Lee's opinion.  (*See* AR 23.)

8 Instead, as discussed above, in rejecting FNP Lee's opinion, the ALJ reasoned that it was

9 "inconsistent with and unsupported by the record." (AR 23.)  As noted above, because this Court's

10 review is limited to the rationale provided by the ALJ, *post-hoc* rationalizations and inferences

11 advanced by the Acting Commissioner cannot justify the ALJ's inadequate explanation for

12 discounting FNP Lee's opinion. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225

13 (9th Cir. 2009) ("Long-standing principles of administrative law require [the Court] to review the

14 ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc*

15 rationalizations that attempt to intuit what the adjudicator may have been thinking."); *Ceguerra v.*

16 *Sec'y of Health & Human Servs.*, 933 F.2d 735, 738 (9th Cir. 1991) ("A reviewing court can

17 evaluate an agency's decision only on the grounds articulated by the agency.").

18    Moreover, courts within this Circuit have routinely held that reversal is warranted under

19 analogous circumstances. *See, e.g.*, *B-P v. Saul*, No. 20-cv-02088-JCS, 2021 WL 2207336, at *8–

20 9 (N.D. Cal. June 1, 2021) (finding the ALJ erred by silently accepting the less restrictive opinion

21 of the non-examining physician and rejecting the more restrictive of the examining physician

22 without providing any reason for doing so); *Mason v. Barnhart*, 63 F. App'x 284, 287 (9th Cir.

23 2003) (reversing the ALJ's decision where the ALJ seemed to reject, without comment, the

24 physician's assessment of the plaintiff's ability to work, "making it difficult for [the] court to

25 engage in meaningful review"); *Parsons v. Comm'r of Soc. Sec. Admin.*, No. 6:12–CV–01693–

26 MA, 2013 WL 6145118, *7–8 (D. Or. Nov. 21, 2013) (finding the treating nurse practitioner's

27 "observations about plaintiff's impairments and his functional limitations constitute[d] significant

28 probative evidence that the ALJ could not reject without comment," and rebuffing the

1  Commissioner's arguments that the error was harmless as "specious"); *see also Woods*, 32 F.4th at

2  792 ("Even under the new regulations, an ALJ cannot reject an examining or treating doctor's

3  opinion . . . without providing an explanation supported by substantial evidence.").

4         In light of the foregoing, the Court finds that the ALJ failed to provide legally sufficient

5  reasons for rejecting FNP Lee's medical opinion.  Furthermore, the Court cannot conclude that

6  the error below was harmless.  *Molina*, 674 F.3d at 1115 (citing *Stout*, 454 F.3d at 1054).  If the

7  ALJ were to have accepted any part of the rejected opinion, such as Plaintiff's inability to lift, sit,

8  or stand for prolonged hours and right-hand weakness (AR 345), the ALJ likely would have

9  reached an RFC determination with greater limitations than those assessed.  (*Compare* AR 345

10  *with* AR 20.)  A substantial likelihood exists that the ALJ's improper rejection of the opinion

11  evidence affected the result and therefore was not "inconsequential to the ultimate nondisability

12  determination," so the error was not harmless.  *Molina*, 674 F.3d at 1121–22.

13  **B.       Remand for Further Proceedings is Appropriate**

14         Where the ALJ commits an error and that error is not harmless, the "ordinary . . . rule" is

15  "to remand to the agency for additional investigation or explanation." *Treichler v. Comm'r of Soc.*

16  *Sec.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (citations omitted).  The Ninth Circuit recognized a

17  limited exception to this typical course where courts "remand[] for an award of benefits instead of

18  further proceedings."  *Id.* at 1100–01 (citations omitted); *see also id.* at 1100 (noting that this

19  exception is "sometimes referred to as the 'credit-as-true' rule").  In determining whether to apply

20  this exception to the "ordinary remand rule," the court must determine, in part, whether (1) "the

21  record has been fully developed;" (2) "there are outstanding issues that must be resolved before a

22  determination of disability can be made;" and (3) "further administrative proceedings would be

23  useful."  *Id.* at 1101 (citations omitted).  As to the last inquiry, additional "[a]dministrative

24  proceedings are generally useful where the record has not been fully developed, there is a need to

25  resolve conflicts and ambiguities, or the presentation of further evidence . . . may well prove

26  enlightening in light of the passage of time."  *Id.* (citations omitted).  Ultimately, "[t]he decision

27  whether to remand a case for additional evidence or simply to award benefits is in [the court's]

28  discretion." *Swenson*, 876 F.2d at 689 (citation omitted).

1   Having found that the ALJ failed to articulate legally sufficient reasons for rejecting opinion

2   evidence, the Court finds that the "credit-as-true" exception to the "ordinary remand rule" is

3   inapplicable because additional administrative proceedings will be useful.  In particular, the ALJ's

4   RFC determination conflicted with such opinion evidence, and can be remedied with further

5   proceedings to accord an opportunity to the ALJ to resolve this conflict.  *Cf. Dominguez v. Colvin,*

6   808 F.3d 403, 408–09 (9th Cir. 2016); *Lule v. Berryhill*, Case No.: 1:15-cv-01631-JLT, 2017 WL

7   541096, at *6 (E.D. Cal. Feb. 10, 2017) ("When there is conflicting medical evidence, 'it is the

8   ALJ's role to determine credibility and to resolve the conflict.'") (quoting *Allen v. Heckler*, 749

9   F.2d 577, 579 (9th Cir. 1984)).  The Court will, therefore, remand this matter for further

10  proceedings.  On remand, the ALJ should address this error by properly evaluating the medical

11  evidence and re-assessing Plaintiff's functional limitations considering that evaluation and the

12  other medical evidence of record.

13  **C.      The Court Declines to Determine Plaintiff's Remaining Assertions of Error**

14  As the Court finds that remand is appropriate for the ALJ to reconsider the medical opinion

15  evidence and reassess Plaintiff's RFC, the Court need not address Plaintiff's other allegations of

16  error (*see, e.g.*, Doc. 11 at 10–15, 19–21).  *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir.

17  2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach

18  [plaintiff's] alternative ground for remand."); *see also Newton v. Colvin*, No. 2:13–cv–2458–

19  GEB–EFB, 2015 WL 1136477, at *6 n.4 (E.D. Cal. Mar. 12, 2015) ("As the matter must be

20  remanded for further consideration of the medical evidence, the court declines to address

21  plaintiff's remaining arguments."); *Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147,

22  1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none

23  of which would provide plaintiff with any further relief than granted, and all of which can be

24  addressed on remand.").

25              **V.      CONCLUSION AND ORDER**

26  Based on the foregoing, the Court finds that the ALJ's decision is not supported by

27  substantial evidence and is, therefore, VACATED and the case REMANDED to the ALJ for further

28  proceedings consistent with this Order.  The Clerk of this Court is DIRECTED to enter judgment

1  in favor of Plaintiff Gervargez Sarishamshajian and against Defendant Kilolo Kijakazi, Acting

2  Commissioner of Social Security.

3

4  IT IS SO ORDERED.

5  Dated:   **September 14, 2023**                    /s/ *Sheila K. Oberto*
6                                                        UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28